

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable A. C. Winborn
Criminal District Attorney
Harris County
Houston 2, Texas

Dear Sir:

Opinion No. O-6525
Re: Effect of House Bill No. 211,
Acts of the Forty-ninth Legis-
lature, on nonresident commer-
cial fishermen's licenses, and
nonresident commercial fishing
boat licenses.

Your request for an opinion of this department
reads in part, as follows:

"On April 2nd a bill was signed by the Gover-
nor amending House Bill No. 683, Chapter 11, Acts
of the 46th Legislature, defining a nonresident
commercial fisherman and a nonresident commercial
fishing boat and providing for licenses for same.
The State Game Department has issued licenses to
nonresident commercial fishermen and to nonresident
boats, which licenses expire on August 31st of
this year. I would like to have your opinion as
to whether or not this new Act cancels all licenses
held by nonresidents and issued to nonresident
boats."

In answering the above inquiry as it pertains to
the nonresident commercial fisherman's license, we invite
your attention to Section 1 of House Bill 683, Chapter 11,
Acts of the Forty-sixth Legislature, appearing as Article
934b-1 in Vernon's Annotated Penal Code. Said section read-
ing as follows:

"Sec. 1. A 'nonresident commercial fisher-
man' for the purpose of this Act is hereby defined
as follows:

"'Any person who is a citizen of any other
state, or any person who has not continually been

Honorable A. C. Winborn, Page 2

a bona fide resident of this state for a period of time more than twelve (12) months, and who takes, catches, or assists in taking or catching, fish or shrimp or oysters or any other edible aquatic life from the tidal salt waters of this State for pay or for the purpose of sale, barter, or exchange.'"

Section 1 of House Bill No. 211, Acts of the Forty-ninth Legislature, in amending the above quoted Article reads as follows:

"Section 1. A 'Non resident Commercial Fisherman' for the purpose of this Act is hereby defined as follows:

"'Any person who is a citizen of any state, or any person who has not continually been a bona fide inhabitant of this state for a period of time more than twelve (12) months, the word person shall include partnerships, associations and corporations who have not continually had a bona fide place of business in this state for a period of time more than twelve (12) months, and who takes, assists in taking or catching, fish or shrimp or oysters, or any other edible aquatic life from the tidal salt waters of this state for pay or for the purpose of sale, barter or exchange.'" (Emphasis added)

A comparison of the above sections discloses that the amending legislation functions only to broaden the scope of those persons required to hold a nonresident commercial fisherman's license. This view is supported in that the Two Hundred Dollar ($200.00) fee for such licenses remains unchanged.

Therefore, it is our opinion that House Bill No. 211, Acts of the Forty-ninth Legislature does not cancel said licenses and those fishermen operating thereunder may continue until August 31, 1945, the normal date of expiration.

In determining your inquiry as to whether Section 4 of House Bill No. 211, Acts of the Forty-ninth Legislature, cancels all prior licenses issued on nonresident commercial fishermen's boats, we call to your attention that prior to

passage of the above Act, the law contained no specific provision pertaining to the licensing of nonresident commercial fishing boats. Resident and nonresident commercial fishermen both receiving their boat licenses by virtue of Article 954a, Section 3, Subsection 7, V.A.P.C., said subsection reading as follows:

"Fish Boat License, for boats equipped with a motor of any kind or with sails, fee Three Dollars ($3)."

Sections 2 and 4 of House Bill No. 211, Acts of the Forty-ninth Legislature, have made specific provisions for the licensing of nonresident commercial fishing boats; said sections reading as follows:

"Sec. 2. A 'Nonresident Commercial Fishing Boat' for the purposes of this Act is hereby defined as follows:

"'Any boat or vessel, which is registered in any other State, or which has not continually been registered in this State for a period of time more than twelve (12) months, or which is not owned by any person, partnership, association of persons or corporation which has had a bona fide place of business in this State for a period of time more than twelve (12) months, and which is used for the purpose of taking, or assisting in taking or catching, fish, shrimp, oysters or any other edible aquatic life from the tidal salt waters of this State for pay or for the purpose of sale, barter or exchange."

"Sec. 4. License for Nonresident Commercial Fishing Boat required; amount of fee. Before any 'Nonresident Commercial Fishing Boat' shall be used for the purpose of taking or assisting in taking or catching, fish, shrimp, oysters or any other edible aquatic life from the tidal salt waters of this State for pay or for the purpose of sale, barter or exchange, a license to be known as 'Nonresident Commercial Fishing Boat License', shall first be procured from the Game, Fish and Oyster Commission of Texas, or one of its authorized agents, privileging them so to do.

Honorable A. C. Winborn, Page 4

"The fee for a Nonresident Commercial Fishing
Boat License shall be Two Thousand Five Hundred
($2500.00) Dollars."

For a consideration of the constitutionality of
the above sections of House Bill No. 211, Acts of the Forty-
ninth Legislature, we quote from the following authorities:

Volume 11, Section 34, Ruling Case Law, page 1046,
reading, in part, as follows:

"By reason of the fact that title to fish
and game within the boundaries of a state is vest-
ed in the people of the state in their sovereign
capacity, the legislature has greater power over
such property than it has over almost any other
commodity, and in order to preserve such property
to the people of the state, the lawmaking assem-
bly may enact that only citizens of the state shall
take fish from the waters within its jurisdiction
. . .

". . . Likewise, the state, having power to
exclude nonresidents from fishing in the state,
may grant them the privilege upon conditions dif-
ferent from those it imposes on its residents as,
for example requiring a larger boat license fee."
(Emphasis added)

On this point see McCready v. Va., 94 U. S. Reports
395; Greer v. Conn., 161 U. S. Reports 519; People v. Setun-
sky, 126 N. W. 844, 161 Mich. 624.

Bearing in mind that the state through its sovereign
powers may constitutionally exclude nonresidents altogether
from its territorial waters, we invite your attention to Vol-
ume 33, Section 21 of American Jurisprudence, page 342, read-
ing, in part, as follows:

"Sec. 21. The constitutional inhibition as
to impairment of the obligation of contracts does
not extend to licenses. A license itself is not
a contract between the sovereignty and the licensee,
and is not property in any constitutional sense.
It does not confer a vested, permanent or absolute
right, but only a personal privilege to be exer-
cised under existing restrictions and such as may

Honorable A. C. Winborn, Page 5

thereafter be reasonably imposed. <u>Free latitude
is reserved by the governmental authority to im-
pose new or additional burdens on the licensee or
to revoke the license.</u> Moreover, <u>this is the gen-
eral rule notwithstanding the expenditure of money
by a licensee in reliance upon the license.</u> . . ."
(Emphasis added)

.On this point see State ex rel Ohsman & Sons Co.,
Inc., v. Starkweather, 7 N. W. 2d 747; Olson et al. v. State
Conservation Commission, 293 N. W. 262, 235 Wis. 473.

Thus it is seen that the state, after choosing to
grant licenses to nonresidents, may impose new or additional
burdens upon these licensees, or may revoke said licenses
altogether, without abridging the obligations of a contract.

This being true, Article 4, Section 2, of the Fed-
eral Constitution, entitled the "Privileges and Immunities"
clause, is the remaining factor to be met in our determina-
tion of the effect of House Bill No. 211, Acts of the Forty-
ninth Legislature, as pertains to nonresident commercial
fishermen's boat licenses. In this connection, we direct
your attention to State v. Ashman, 135 S. W. 325; 123 Tenn.
654, a case which contains a good statement of the majority
rule in the United States. Said statement reads as follows:

"The rights, privileges, and immunities which
are secured by this clause to the inhabitants of
the several states do not include any rights in
the property of the several states held in trust
for their own inhabitants, and laws which prohibit
them in whole or in part from participating in the
benefits of that property do not deprive them of
any constitutional rights. The majority of the
states have enacted laws prohibiting or limiting
the rights of nonresidents to take game or fish
within their respective boundaries, and, upon the
principles above stated, this legislation has been
invariably upheld by all the courts."

In the light of the above cited authorities, it is
the opinion of this department that Section 4 of House Bill
No. 211, Acts of the Forty-ninth Legislature, cancels all

Honorable A. C. Winborn, Page 6

existing licenses issued on nonresident commercial fishing boats; the bill having become effective as of April 2, 1945, by passing with the required number of votes in each house of the Legislature and signed by the Governor.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Benjamin Woodall_
　　　Benjamin Woodall
　　　　　Assistant

By _Bob D. Maddox_
　　　Bob D. Maddox

APPROVED JUN 14, 1945

ATTORNEY GENERAL OF TEXAS

BDM:mp

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN